IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE WHITE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 10-2017 |
| | : | |
| v. | : | |
| | : | |
| PLANNED SECURITY SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |

**Jones, II, J.**                                                                                           **December 15, 2011**

## MEMORANDUM

This matter arises out of a series of incidents that occurred during the course of Plaintiff Tyrone White's employment by Defendant Planned Security Services ("PSS"), which allegedly resulted in the discriminatory termination of Mr. White. Before the Court is the unopposed Motion for Summary Judgment filed by PSS and Defendants Dino Iuliano, Carlos Brown, Ashton Jones, Rodney Jones and Mary Galgon (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 56(c). For the reasons set forth below, the Motion for Summary Judgment will be granted.

**I.     PROCEDURAL BACKGROUND**

On May 18, 2010, Mr. White filed a Complaint against PSS alleging that PSS unlawfully discriminated and retaliated against him because of his gender, age and race (Dkt. No. 3).[1] Mr.

---

[1] While it is not entirely clear from Mr. White's Complaint that he does in fact pursue a race discrimination claim, the Court will err on the side of leniency and construe it as such, as do Defendants. *See* Dkt. No. 34 ¶ 1; *Johnson v. Phila. County,* No. 09-5482, 2010 WL 1995126, at *1 (E.D. Pa. May 17, 2010) ("In determining the sufficiency of a *pro se* complaint, the court must be mindful to construe it liberally in favor of the plaintiff." (citing *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)).

1

White, acting *pro se*, seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"). On June 7, 2010, PSS filed an Answer to the Complaint (Dkt. No. 6). On June 14, 2010, Mr. White filed an Amended Complaint, providing his Notice of Right to Sue issued by the Equal Employment Opportunity Commission on April 5, 2010, and naming the additional individual Defendants listed above, as well as Ashton Jones and Carl Stoffer (Dkt. No. 13).[2] On September 29, 2011, Defendants filed a joint Motion for Summary Judgment on all counts of the Complaint (Dkt. No. 34 ("Defs. MSJ")). Mr. White has filed no opposition.

## II.     FACTUAL ALLEGATIONS

Mr. White, an African-American male, alleges few facts. In sum, he claims that his Caucasian PSS supervisors, Defendants Carlos Brown and Carl Stoffer, retaliated against him for "wanting to report solicitation behaviors by Carlos for constantly borrowing money and...forgetting to repay." Dkt. No. 3. Mr. White also claims that Mr. Brown told Mr. Stoffer to cancel a mediation meeting scheduled for Mr. White, and that Mr. Stoffer informed Mr. White of his termination when he appeared for his work shift on June 23, 2008. *Id.* Mr. White further alleges that two PSS employees named Ashley Jones and Jeanette Collier, both African-American women in their early 20s, had tardiness records at PSS but were not similarly

---

[2]The docket reflects that neither Defendant Ashton Jones nor Defendant Stoffer were served with either the Complaint or the Amended Complaint. *See* Dkt. No. 21. While this action would thus have been subject to dismissal as against Mr. Jones and Mr. Stoffer (*see* Fed. R. Civ. P. 4(m)), Defendants' counsel does in fact purport to represent Mr. Jones and Mr. Stoffer on the record, and moves for summary judgment in their names as well as on behalf of the other Defendants. Accordingly, summary judgment will be entered against all Defendants, including Mr. Jones and Mr. Stoffer.

terminated.  *Id.*  Finally, Mr. White claims that Defendant Ashton Jones was also not disciplined.  Mr. White does not explain on what grounds he seems to believe Mr. Jones should have been so disciplined, or how the circumstances of the other individuals' employment are related to Mr. White's.  *Id.*

In their Statement of Undisputed Facts (Dkt. No. 34 ("Defs. SOF")), Defendants fill in some of the gaps left open by Mr. White's brief pleadings.  PSS contracts to provide safety and security services for residential and commercial facilities (Defs. SOF ¶ 12), including The Arts Condominium ("The Arts"), a residential building located at 1324 Locust Street in Philadelphia, Pennsylvania.  *Id.* ¶ 13.  Mr. White joined PSS as a concierge at The Arts on August 6, 2006.  *Id.* ¶ 15.  While working for PSS at The Arts, Mr. White's supervisor was Defendant Carlos Brown, an African-American male who, at the time, was in his late 40s.  *Id.* ¶ 16.[3]

During his shifts, Mr. White would often work with Jeffrey Glencamp, an African-American male whom Mr. White identified to be in his late 40s.  *Id.* ¶ 20.  The Arts' former property Manager Mary Galgon and Mr. Brown both testified that Mr. White argued frequently with Mr. Glencamp, sometimes in front of The Arts' residents.  *Id.* ¶ 21.  Mr. Brown repeatedly warned both Mr. White and Mr. Glencamp not to argue with each other.  *Id.* ¶ 22.  Ms. Galgon and Mr. Brown both received complaints from The Arts' residents regarding Mr. White's behavior, with Mr. Brown receiving additional complaints from residents that Mr. White had refused to comply with their requests.  *Id.* ¶ 23.  Mr. White admitted at his deposition that he had a loud argument with Mr. Glencamp on June 14, 2008, subsequent to an upsetting telephone

---

[3]Mr. White agrees that he was "recommended" to work for PSS at The Arts by Mr. Brown.  *Id.* ¶ 16 (quoting Ex. D to Defs. SOF (Tyrone White 5/31/11 Deposition Transcript ("White Dep.")) at 10-11).

conversation with Mr. Brown; Mr. Brown also received a report in June 2008 that Mr. White had indeed instigated a loud argument with Mr. Glencamp at The Arts.  *Id.* ¶¶ 25-26.

After receiving this report, Mr. Brown removed Mr. White from the work schedule on June 15, 2008, the date after the argument.  *Id.* ¶ 27.  Mr. Brown testified that Defendant Stoffer, a former PSS Regional Manager, offered to meet with Mr. White to discuss why he was taken off the work schedule.  *Id.* ¶ 28.  Mr. White, however, refused to meet with Mr. Stoffer.  *Id.*  As a result, Ms. Galgon, Mr. Brown and Mr. Stoffer collectively decided to terminate Mr. White's employment with PSS, effective June 28, 2011.  *Id.* ¶ 29.  At the time of Mr. White's termination, PSS employed approximately ten (10) individuals at The Arts, all of whom were African-American.

In his deposition, Mr. White testified that he was wrongfully terminated because he had perfect attendance with PSS.  *Id.* ¶ 32.  It appears from his testimony that he believes Ashley Jones and Jeannette Collier were treated more favorably than he was because they allegedly had inconsistent attendance records yet were not terminated.  *Id.* ¶ 34.  Mr. White speculated that if he had missed as many days of work as either Ms. Jones or Ms. Collier, he would have been terminated.  *Id.*  Mr. White also contended that Mr. Glencamp and his nephew, both of whom are African-American, were permitted to work the same shift and as such were treated more favorably than Mr. White, despite the fact that, according to Mr. White, Mr. Glencamp's nephew was fired by PSS.  *Id.* ¶ 35.  As for Ms. Galgon, Mr. White referred to the "respect" they have for

each other and did not articulate why he named her as a Defendant in this suit. *Id.* ¶ 36 (quoting White Dep. at 37-38).[4]

## II.   STANDARD OF REVIEW

Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. *Anderson*, 477 U.S. at 248.

"In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant. The employer must persuade [the court] that, even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in

---

[4]Mr. White similarly failed to identify his reason(s) for naming Dino Iuliano and Rodney Jones as Defendants.

the plaintiff's favor." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008) (citations omitted). The court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Seigel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

### III. DISCUSSION

Under Title VII, it is unlawful for an employer "to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2003).[5] Where, as here, the plaintiff presents only circumstantial evidence of wrongful discharge based on any of these protected classes, the *McDonnell Douglas* burden-shifting framework governs. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir.1999). First, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 801-802. Second, if the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant is able to carry that burden, the burden of proof shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual. *Id.* at 801-04; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

To establish a *prima facie* case of discrimination, Mr. White must show that (1) he belongs to a protected class; (2) he was qualified for his position; and (3) he was terminated

---

[5]Courts apply the same analytical framework to discrimination claims brought under the ADEA and PHRA as to those brought pursuant to Title VII. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (ADEA claims examined under Title VII standard); *Harley v. McCoach*, 928 F. Supp. 533, 538 (E.D. Pa.1996) (PHRA claims examined under Title VII standard).

under circumstances that give rise to an inference of unlawful discrimination. *See Jones*, 198 F.3d at 410-11. As an African-American man over the age of 40, Mr. White satisfies the first prong. While presumably he was qualified for his position at the time of his hire, his repeated arguments in The Arts, prompting complaints from residents, arguably later disqualified him.

Regardless, Mr. White has failed to point to any circumstances that give rise to an inference of unlawful discrimination on the grounds of his age, race or gender. He claims only that 1) he was retaliated against for wanting to report Mr. Brown for supposed "solicitations;"[6] and 2) other individuals with worse attendance records than his were not terminated. All parties described by Mr. White as having received preferential treatment at the Arts are African-American, like Mr. White himself; Mr. Brown and Mr. Stoffer are both in their 40s, the same protected age class as Mr. White. While Ms. Ashley Jones and Ms. Collier are both women, and are allegedly in their 20s (as is Mr. Ashton Jones), Mr. White provides no grounds to infer that they were treated more favorably than he was because of their gender or age. Even if Mr. White had supported a *prima facie* case of discrimination, he has not rebutted PSS' proffered justification for his termination–his public arguments with colleagues that disrupted residents in The Arts, and his failure to remedy his behavior after repeated warnings.

---

[6] As Defendants rightfully suggest, Mr. White's retaliation claim "is most akin to an argument that he was wrongfully terminated under Pennsylvania's 'public policy exception' to the at-will employment doctrine." Defs. MSJ at 10. As Mr. White does not allege that his termination violated Pennsylvania's public policy or that PSS conducted itself in a manner which implicates more than Mr. White's personal interests, he cannot support his retaliation claim under Title VII, the ADEA or the PHRA. *See Gallagher v. Intermune Inc.*, No. 04-1200, 2005 WL 742434 at *1 (E.D. Pa. Mar. 31, 2005) (citing *McLaughlin v. Gastrointestinal Specialists*, 750 A.2d 283, 289 (Pa. 2000)).

### IV.     CONCLUSION

Mr. White clearly disagrees with PSS' decision to terminate his employment, but raises no evidence to suggest that the decision was motivated by discriminatory bias based on his age, race or gender.  His race discrimination claims do not address the fact that all of his comparator co-workers at The Arts were African-American; his gender discrimination claims mistakenly focus on his excellent attendance record.  His age discrimination claims are premised on the theory that he would have been terminated if he were absent as often as his younger co-workers.  Such speculation, without more, is insufficient.  "A non-moving party may not 'rest upon mere allegations,' general denials or ... vague statements...." *Trap Rock Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)).

For the foregoing reasons, summary judgment will be granted in favor of all Defendants and against Plaintiff.  An appropriate Order follows.